[No. 31648-0-II.   Division Two.   November 14, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. STONEY ALLEN ZIMMERMAN, *Appellant*.

*Thomas E. Weaver, Jr.*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — On November 1, 2005, we filed an opinion affirming Stoney Allen Zimmerman's conviction of first degree child molestation. On July 7, 2006, the Supreme Court granted Zimmerman's petition for review and remanded to us for reconsideration in light of *State v. Jackman*, 156 Wn.2d 736, 132 P.3d 136 (2006) (*Jackman* II). Having reconsidered in light of *Jackman* II, it remains our view that the court's error in commenting on the evidence did not affect the verdict and that Zimmerman is not entitled to a reversal of his conviction. Therefore, we affirm Zimmerman's conviction but do so under the reasoning set forth in *Jackman* II.

## FACTS

¶2 Zimmerman is J.C.'s biological father. Zimmerman began dating J.C.'s mother when she was 14. J.C.'s mother was 16 when J.C. was born. Zimmerman and J.C.'s mother ended their relationship when J.C.'s mother was 19.

¶3 J.C. testified that she turned age 11 on July 8, 2001. That summer, J.C. often stayed with Effie Harvey, a family friend who was also an acquaintance of Zimmerman's mother. One night in July 2001, J.C. and Zimmerman were both staying at Harvey's house. Zimmerman and Harvey spent the night drinking. J.C. was awakened by her father touching her. J.C. testified that Zimmerman, who appeared to be drunk, ran his hand up her leg and touched her "private part" inside her underwear. 1 Report of Proceedings at 14. When J.C. screamed, Harvey came into the room. J.C. did not say anything to Harvey, and Zimmerman left the room. When J.C. awoke the next morning, Zimmerman was gone; Zimmerman later called J.C.'s mother and told her that he wanted to disown J.C.

¶4 Initially, J.C. did not tell anyone, including Harvey, what had happened. But in 2002, J.C. told her uncle about the night at Harvey's house. The uncle told J.C.'s mother. J.C.'s mother confronted Zimmerman. Zimmerman denied the allegation.

¶5 J.C. next met with her father in 2003, at the urging of Zimmerman's then girl friend, Jennifer Holcrow. Holcrow knew about the molestation allegation, but she hoped that Zimmerman and J.C. could repair their relationship. The meeting was brief and the incident was not discussed. Holcrow later testified that she ended her relationship with Zimmerman after he admitted, while intoxicated, that he had molested J.C. and that he had thought about performing oral sex on Holcrow's roommate's seven-year-old daughter.

¶6 Zimmerman was charged and convicted of one count of first degree child molestation for molesting J.C. at Harvey's house.[1] One of the jury instructions stated: "In order to convict a person of the crime of child molestation as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated." Clerk's Papers (CP) at 33. Another instruction, the elements instruction, listed J.C.'s birth date, July 8, 1990. Zimmerman appealed his conviction.

¶7 Upon review, we held that it was a manifest constitutional error to include J.C.'s birth date in the elements instruction because the instruction answered a factual question relevant to the State's burden of proving beyond a reasonable doubt that J.C. was younger than 12 at the time of the alleged offense. *State v. Zimmerman*, 130 Wn. App. 170, 175, 121 P.3d 1216 (2005). But under *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999),

---

[1] RCW 9A.44.083(1) states:

A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

we held the error harmless. *Zimmerman*, 130 Wn. App. at 177-79.

¶8 Meanwhile, our Supreme Court granted review of *State v. Jackman*, 125 Wn. App. 552, 104 P.3d 686 (2004) (*Jackman* I). In the *Jackman* I case, we held that a trial court's inclusion of a victim's birth date on jury elements instructions was a manifest constitutional error. 125 Wn. App. at 560, *aff'd*, 156 Wn.2d 736, 132 P.3d 136 (*Jackman* II). We also held that reversal of Jackman's conviction was required because the instructional error was structural. *Jackman* I, 125 Wn. App. at 561. The Supreme Court affirmed the reversal on different reasoning. *Jackman* II, 156 Wn.2d at 743-45. The Supreme Court held that including the victims' birth date in the jury instructions was not structural but it was a judicial comment on the evidence. Because the record in *Jackman* II did not affirmatively show that no prejudice could have resulted, it remanded the case for a new trial with proper jury instructions. 156 Wn.2d at 745.

¶9 Our Supreme Court then granted Zimmerman's petition for review and remanded the matter to us for further consideration in light of its opinion in *Jackman* II. *State v. Zimmerman*, noted at 157 Wn.2d 1012, 138 P.3d 113 (2006). We now do so.

## ANALYSIS

■■ ¶10 In *Jackman* II, our Supreme Court held that a jury instruction referencing a victim's birth date is an improper judicial comment when an element of the crime is the victim's minority. 156 Wn.2d at 744. We presume judicial comments on the evidence are prejudicial. The State must show that the defendant was not prejudiced by such comments unless the record affirmatively shows that no prejudice occurred. *State v. Levy*, 156 Wn.2d 709, 723, 132 P.3d 1076 (2006).

¶11 Here, *Jackman* II requires we hold that putting J.C.'s birth date in the elements instruction for first degree

child molestation was a judicial comment on the evidence. *See* RCW 9A.44.083. But applying *Jackman* II to the record before us, we find the record affirmatively shows that no prejudice occurred.

¶12 In *Jackman* II, the court concluded the record did not affirmatively show that no prejudice could have resulted because it was conceivable that a reasonable jury could have determined the victims were *not* under the relevant age at the time of the offenses if the trial court had excluded their birth dates in the jury instructions. 156 Wn.2d at 745. The court reasoned that the victims' minority was a threshold issue, without which there was no crime, and although the defendant did not stipulate to the fact of the victims' ages, he did not dispute their ages either. *Jackman* II, 156 Wn.2d at 745. Jackman only asserted that he did everything he could to ascertain the victims' ages. *Jackman* II, 156 Wn.2d at 745.

¶13 Another case that illustrates the rule in *Jackman* II is *Levy*.[2] In that case, the Supreme Court addressed whether references to a building, crowbar, revolver, and jewelry in jury instructions was a reversible judicial comment on the evidence. *Levy*, 156 Wn.2d at 720. Levy was convicted of one count of first degree burglary, two counts of first degree robbery, and one count of second degree unlawful possession of a firearm. *Levy*, 156 Wn.2d at 715-16. On appeal, the court held that although the instruction was an improper judicial comment on the evidence, no prejudice could have resulted from the reference to the apartment as a building because no jury could reasonably conclude that an apartment was not a building. *Levy*, 156 Wn.2d at 726-27. Additionally, the court found that although it is possible the jury might have erroneously concluded the crowbar was a deadly weapon, the jury found the defendant did not possess the crowbar. Thus, it was not possible that the jury instruction referring to the crowbar as a deadly weapon prejudiced the defendant. *Levy*, 156 Wn.2d at 727.

_____

[2] Our Supreme Court filed both *Levy* and *Jackman* II on April 13, 2006.

The *Levy* court concluded that while some of the jury instruction references were judicial comments on the evidence, the record affirmatively showed the errors were not prejudicial. 156 Wn.2d at 727.

■ ¶14  Likewise, while including J.C.'s birth date in the jury instruction here was an improper judicial comment, the record affirmatively shows the error was not prejudicial. No jury could reasonably conclude that J.C. was over the age of 12 when she and Zimmerman stayed at Harvey's home at the time of the alleged offense. Critical to our conclusion is the fact that Zimmerman is J.C.'s biological father and, even though he denied molesting her, he knew and never disputed knowing her age. Moreover, J.C. testified that her date of birth was July 8, 1990; J.C.'s mother testified that J.C. was born shortly after her 16th birthday, which was in June 1990; and defense witness Harvey testified that she believed J.C. turned 10 during the summer of the alleged molestation.

¶15  Finally, unlike *Jackman* II, there was no dispute regarding J.C.'s age or date of birth at any point during the proceedings. The jury was required to find that the alleged sexual contact occurred between June 1 and July 31, 2001, and that J.C. was less than 12 at the time of the alleged sexual contact.[3] We conclude that even though the jury instructions stated J.C.'s birth date, the record affirmatively demonstrates that no prejudice occurred as a result because no jury could reasonably conclude J.C. was over 12 during the charging period. Therefore, we affirm our decision that the trial court's instructional comment on the

---

[3] The improper instruction stated in part:

To convict the defendant of the crime of child molestation in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

    (1)    That on or between June 1, 2001 and July 31, 2001, the defendant had sexual contact with J.C. (*7/8/1990*),

    (2)    That J.C. was less than twelve years old at the time of the sexual contact and was not married to the defendant.

CP at 32 (emphasis added).

evidence was harmless and that Zimmerman is not entitled to a reversal of his conviction.

¶16 Affirmed.

BRIDGEWATER, J., and MORGAN, J. PRO TEM., concur.

Review denied at 161 Wn.2d 1012 (2007).